**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
EVANSTON INS. CO.,

                           Plaintiff,                        **REPORT AND
RECOMMENDATION**

        - against -

                                                                CV 06-1107 (BMC) (JO)

BIOMEDICAL TISSUE
SERVICES, LTD., et al.,

                           Defendants.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

      Plaintiff Evanston Insurance Company ("Evanston") commenced this action on March 10, 2006, against defendants Biomedical Tissue Services, Ltd. ("BTS") and the president of BTS, Michael Mastromarino ("Mastromarino"), seeking rescission of an insurance policy that the defendants allegedly procured from Evanston through numerous material misrepresentations, or, as alternatives to rescission, either reformation or declaratory relief.  Docket Entry ("DE") 1 (Complaint).  Neither defendant responded to the Complaint and, on the basis of the Clerk's notation of that default, Evanston now seeks a default judgment.  DE 7.  The Honorable Brian M. Cogan, United States District Judge, has referred Evanston's motion to me for a report and recommendation.  I now make my report and, for the reasons set forth below, respectfully recommend that the court enter a default judgment against the defendants rescinding the policy at issue.

I.     Background

      The following facts are drawn from Evanston's Complaint and the documents submitted in support of its motion for default judgment.  Evanston is an Illinois company that provides professional liability insurance to medical professionals.  Complaint ¶¶ 1, 2, 7.  BTS is a New

Jersey corporation that harvests tissue and bone from human cadavers for use in skin transplants and other medical procedures. Complaint ¶ 8; DE 9 (Declaration of [Plaintiff's counsel] Meryl R. Lieberman in Support of Motion for Default Judgment) ("Lieberman Dec.") Ex. H (reprinting Michael Powell and David Segal, "In New York, a Grisly Traffic in Body Parts," *The Washington Post*, January 28, 2006 ("Powell Article")) at 1-2. In February of 2005, BTS approached Evanston seeking insurance. Lieberman Dec. ¶ 23.[1] Evanston reviewed the company's application and, satisfied that BTS was a suitable candidate for coverage, issued it a professional liability insurance policy effective from February 13, 2005 through February 13, 2006 (the "Policy"). Complaint ¶ 23; DE 10 (Affidavit of Rocco Malandrino) ("Malandrino Aff.") ¶ 5; Complaint Ex. A (copy of the Policy). By its terms, the Policy covers losses arising out of any claim made during the coverage period for liability arising from acts or omissions during the period from February 13, 2004 (one year before the effective date) until the Policy's end date. Complaint ¶ 10; Policy at 1.

After obtaining the Policy from Evanston, BTS and Mastromarino were named as defendants in over 70 civil actions in various jurisdictions, all of which arose from complaints about their tissue-harvesting practices (the "underlying lawsuits"). *See* Lieberman Aff. ¶ 38; Complaint ¶¶ 11-20. Most of those lawsuits were eventually consolidated as part of a federal multi-district litigation in the District of New Jersey, with the remainder pending in the state courts of New York, New Jersey, and Texas. Lieberman Aff. ¶ 38; Complaint ¶¶ 12-14, 16-17,

---

[1] BTS, through its insurance broker Crump Insurance Services of Atlanta, Inc., first applied for an Evanston insurance policy in February of 2004, but received coverage instead from Admiral Insurance Company, to which BTS had applied simultaneously. Lieberman Dec. ¶¶ 9, 22. In its 2005 application to Evanston, BTS included copies of the documentation it had originally submitted in 2004. *Id.* ¶ 23.

19. The underlying lawsuits fall into two categories. First, tissue and bone recipients have sued Mastromarino and BTS, asserting claims arising from their alleged failure to perform proper donor screening or to test the harvested materials for various diseases. Second, survivors of the persons from whose bodies Mastromarino and BTS harvested the bone and tissue have asserted claims that the defendants desecrated bodies without valid consent. Lieberman Aff. ¶¶ 39-42.[2]

Upon learning about some of the lawsuits, Evanston repudiated the Policy. Specifically, on March 6, 2006, Evanston's counsel notified the defendants that because the insurer believed that Mastromarino had obtained the Policy by virtue of a lie, Evanston would neither defend Mastromarino or BTS in the underlying lawsuits (or any similar future lawsuits), nor indemnify any judgment or settlement resulting from those actions. In particular, Evanston accused BTS of concealing the criminal nature of its business, and of making specific material misrepresentations in its insurance application, including failing to disclose that Mastromarino had surrendered his dental license in or around 2000 and was treated for drug addiction in or around 2004. Evanston enclosed with its letter a check for $23,707.50, representing the premium BTS had paid to secure the Policy as well as interest. Lieberman Aff. Ex. I; Complaint ¶ 34.

Four days later, on March 10, 2006, Evanston commenced the instant action seeking to rescind the Policy and render it void *ab initio* on the ground that Evanston relied upon material misrepresentations in BTS's application in deciding to award coverage. Complaint ¶ 1, 36, 40. In the alternative, Evanston asks the court to reform the Policy to exclude coverage for any and

---

[2] In addition to the civil lawsuits described in the text, Mastromarino is also a defendant in a criminal case. The 122-count criminal indictment repeats many of the factual allegations that form the basis for the underlying lawsuits. Complaint ¶ 30; Lieberman Aff. Ex. E (*People v. Mastromarino, et al.*, Indictment No. 1320/2006 (N.Y. Sup. Ct. Kings County Feb. 3, 2006)) (the "Indictment").

all claims arising from the underlying lawsuits, or to declare that coverage for such claims is unavailable under the terms of the Policy. *Id.* ¶¶ 42-76; DE 12 (memorandum in support of motion for default judgment) ("Memo.") at 8-12.

Evanston served the Complaint on both defendants on April 24, 2006. DE 2. Neither has ever responded. On September 15, 2006, Evanston asked the Clerk to enter a notation of the defendants' default. DE 5. The Clerk did so on September 18, 2006. DE 6. Four weeks later, (only one day before a court-ordered deadline, *see* Electronic Order dated October 3, 2006), Evanston filed a motion for default judgment that failed to include any evidence in support of the relief it sought. DE 7. Judge Cogan noted the insufficiency of Evanston's proofs and referred the matter to me to receive additional information at my discretion and to render the instant report and recommendation. Electronic Order dated October 16, 2006. I afforded Evanston a final opportunity to submit any materials in support of its request for relief by November 23, 2006. Electronic Order dated October 26, 2006. In response, Evanston submitted a memorandum of law together with supporting affidavits, and documentary exhibits including the materials BTS had submitted in support of its applications for insurance, correspondence between Evanston and BTS, and copies of various submissions in the underlying lawsuits. *See* DE 9-DE 12.

II.　Discussion

　　A.　Threshold Issues

　　　　1.　The Effect Of The Defendants' Default

When a party is found to be in default, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Credit Lyonnais Sec. (USA), Inc. v.*

*Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); Fed. R. Civ. P. 8(d). However, entry of default does not necessarily entitle the moving party to the relief it seeks. *Agamede Ltd. v. Life Energy and Technology Holdings, Inc.*, 2007 WL 201167, at *1 (E.D.N.Y. January 23, 2007). In determining whether a final default judgment should be granted, the court retains discretion to consider whether the facts alleged state a valid cause of action. *Id.* (citing *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993)); *see also United States v. Ponte,* 246 F. Supp. 2d 74, 76 (D. Me. 2003) ("A plaintiff must ... establish that on the law it is entitled to the relief it seeks, given the facts as established by the default.").

2.      Subject Matter Jurisdiction

Evanston's primary claim for relief seeks rescission or reformation of the Policy. As an alternative form of relief, it seeks a declaration of its rights pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Although the latter claim is a federal question for which Evanston could invoke the court's jurisdiction pursuant to 28 U.S.C. § 1331, Evanston relies exclusively on the diversity jurisdiction statute, 28 U.S.C. § 1332(a)(1), to establish subject matter jurisdiction in this case. *See* Complaint ¶¶ 1, 2.[3]

---

[3] Evanston could arguably have relied on the existence of subject matter jurisdiction over its claim for declaratory relief to get its case into this court, and then asserted supplemental jurisdiction over its state contract law claim, pursuant to 28 U.S.C. § 1367. Because I conclude that subject matter jurisdiction over the contract claim exists pursuant to the diversity statute, I do not analyze that alternate method for establishing subject matter jurisdiction. Moreover, because I conclude that Evanston is entitled to rescission of the Policy, the court's adoption of my recommendation would render moot Evanston's claim for alternate relief under the Declaratory Judgment Act. That would be just as well, because the latter statute provides for a civil remedy but does not independently confer subject matter jurisdiction on this court. Evanston's failure to invoke federal-question jurisdiction under 28 U.S.C. § 1331 is therefore, at least as a technical matter, an obstacle to obtaining declaratory relief (and also to relying on such a claim as the predicate for invoking supplemental jurisdiction over the state contract claim). Notwithstanding the foregoing, however, it is clear that this court may properly exercise jurisdiction over the

5

That assertion of jurisdiction requires some discussion. There is no doubt that the Complaint sufficiently alleges complete diversity of citizenship among the parties: Evanston is organized under Illinois law and has its principal place of business there, Complaint ¶ 2, BTS is a New Jersey-based company with its principal place of business in New York, and Mastromarino is a citizen of New Jersey. *See* Complaint ¶¶ 3-4, 8-9. Evanston's demonstration that the amount-in-controversy requirement is satisfied is, however, slightly more attenuated.

To be sure Evanston does explicitly allege that the amount in controversy "exceeds ... $75,000." Complaint ¶ 5. But nowhere does the Complaint allege that, by virtue of its policy, it is – or even anticipates the risk of becoming – liable for any specific amount in excess of the jurisdictional floor. Instead, the Complaint alleges that the Policy insures BTS up to $1,000,000 (either for a single claim or as an aggregate of multiple claims), Complaint ¶ 10, and that there are a number of pending lawsuits against Mastromarino and BTS seeking compensatory and punitive damages, with more such actions expected. Complaint ¶¶ 11-20. The Complaint does not explicitly allege that the Policy requires Evanston to defend those lawsuits or indemnify the defendants for any adverse judgments they may produce, but that obligation is set forth in the Policy itself, which the Complaint includes as an exhibit and, at least implicitly, incorporates by reference. *See* Complaint ¶ 10; Policy (¶¶ 1-2 of section entitled "The Coverage"). The allegation of multiple lawsuits by itself does not establish that enforcement of the Policy will put Evanston at risk for more than $75,000. Indeed, Evanston affirmatively pleads elsewhere in its complaint that even if the Policy remains in effect, it cannot be required to indemnify

---

claims before it, and that any technical deficiency in that regard would be amenable to being cured in an amended pleading.

Mastromarino and BTS for any award of punitive damages in the underlying lawsuits. *See* Complaint ¶¶ 74-76. Nevertheless, because the defendants' default necessarily concedes all of the Complaint's factual allegations with respect to liability, as discussed below, and because courts generally defer to a plaintiff's assertion of the amount in controversy absent evidence to the contrary, I conclude that the Complaint's allegations suffice to invoke this court's subject matter jurisdiction as a predicate for making a finding of liability. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (dismissal for failure to satisfy amount-in-controversy requirement only justified if it appears to a legal certainty that plaintiff's good faith claim is insufficient).

      3.     <u>Venue</u>

Evanston's choice of venue in the Eastern District of New York is also arguably improper. The Complaint asserts venue pursuant to 28 U.S.C. § 1391(a)(2) on the ground that a substantial part of the events giving rise to its claims took place in this district. Complaint ¶ 6. To the extent that the "events" to which Evanston refers are the bone and tissue harvesting procedures that the defendants performed at funeral homes in Brooklyn, New York, *see* Complaint ¶ 9, it is at least arguable that the pleading is insufficient, as those events do not themselves give rise to Evanston's claims for relief. Rather, Evanston's claims are predicated on the defendants' allegedly material misrepresentations in applying for the Policy, and the Complaint is silent as to where those representations were made. In that regard, I note that the application bears the address of BTS's New Jersey office. *See* Lieberman Aff. Ex. D ("2005 Application") at 1.

Here again, any concerns are alleviated by virtue of the defendants' default. The Complaint's allegations are facially sufficient to assert venue in this district, and no defendant has

controverted it, much less raised the defense of lack of venue. The defendants having forfeited their opportunity to challenge venue, I proceed to the merits of Evanston's claims.

4. Choice Of Law

A federal court exercising diversity jurisdiction must apply state substantive law to the claims before it. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Evanston asserts claims in the alternative for rescission, reformation, or a declaratory judgment as to its obligations under the Policy, but fails clearly to identify which state's substantive law it believes the court should use in adjudicating those claims. Instead, Evanston argues that it is entitled to the relief it seeks under the laws of both New York (the state in which the court sits and in which BTS has its principal place of business, Complaint ¶ 3) and New Jersey (the state in which BTS is organized, Complaint ¶ 3, and in which, apparently, the defendants made the allegedly false representations that persuaded Evanston to issue them the Policy).

For purposes of its choice-of-law analysis, this court is guided by the law of its home state of New York. *See GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1981)). Where all parties in a diversity case apply substantive New York law in their papers, courts in this jurisdiction generally dispense with choice-of-law analysis and simply follow the parties' lead by applying New York's substantive law as well. *See New England Life Ins. Co. v. Taverna*, 2002 WL 718755 (E.D.N.Y. March 1, 2002) at *7 n.9 (citing *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 121 n.5 (2d Cir. 1998)). Here, however, that shortcut is unavailable: the defendants have submitted no papers at all, and Evanston's papers cite the laws of both New York and New Jersey. Evanston generally refers to substantive New York law in making its

8

arguments, but cautions that by doing so it "does not concede that New York law applies to this matter" but is instead merely providing a "legal framework" for its motion. Memo. at 4 n.1. Evanston goes on to insist, without explanation, that New Jersey law would produce the same result it advocates under the law of New York. *Id*. Unfortunately, by doing so, Evanston glosses over the relevant inquiry, because under New York's choice-of-law rules, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *GlobalNet*, 449 F.3d at 382 (citing *In re All-State Ins. Co., (Stolarz)*, 81 N.Y.2d 219, 223 (1993)). Under the circumstances, I am therefore constrained to provide the choice-of-law analysis that Evanston omits.

     a.  The Laws Of New York And New Jersey Conflict

An actual conflict between the laws of two jurisdictions exists "where the applicable law from each jurisdiction provides different substantive rules." *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citing *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)). A survey of relevant New York and New Jersey law reveals an actual conflict between the two with respect to the instant claims.

Under New York law, an insurer seeking to rescind an insurance policy must demonstrate that the insured "made a material misrepresentation" in seeking coverage. *Parmar, et al. v. Hermitage Ins. Co.*, 21 A.D.3d 538, 540 (2005) (citing *Zilkha v. Mutual Life Ins. Co. of N.Y.*, 287 A.D.2d 713, 714 (2001)); N.Y. Ins. L. § 3105(b) (McKinney's 1984). By definition, a misrepresentation is a false "statement as to a past or present fact, made to the insurer by [the applicant] ... as an inducement to the making [of the contract]." N.Y. Ins. L. § 3105(a). A misrepresentation is material if the insurer would have refused to issue that particular insurance

policy had it been aware of the facts misrepresented; the insurer need not prove that it would have refused coverage altogether. N.Y. Ins. L. § 3105(b)-(c) (referring to "such" contract rather than to "any" contract); *Aetna Cas. & Sur. Co. v. Retail Local 906 of AFL-CIO Welfare Fund*, 921 F. Supp. 122, 131 (E.D.N.Y. 1996) ("the insurer need not prove that it would not have issued any policy at all, but that the policy in question would not have been issued") (citing *Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32-34 (2d Cir. 1988) (applying New York law)). However, a party may not rely on conclusory allegations by insurance company employees to establish materiality as a matter of law.

> [Rather,] the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, which show that it would not have issued the same policy if the correct information had been disclosed in the application.

*Parmar*, 21 A.D.3d at 540 (citing N.Y. Ins. L. § 3105(c)); *Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 437 (2003).[4] Rescission of an insurance policy renders the policy void *ab initio*. N.Y. Ins. L. § 3105(b); *Stein v. Sec. Mut. Ins. Co.*, 38 A.D.3d 977, 978 (2007); *see also Retail Local 906*, 921 F. Supp. at 131 ("Under New York law, 'an insurance policy issued in reliance on material misrepresentations is void from its inception.'") (quoting *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48, 52 (2d Cir. 1996)).

New Jersey law, although similar, differs in an important respect. An insurer is entitled to rescission of an insurance contract where "a representation by the insured, whether contained in the policy itself or in the application for insurance ... is untruthful, material to the particular

---

[4] Although both *Parmar* and *Curanovic* were decisions on summary judgment, Evanston similarly bears the burden of demonstrating that the facts established by the defendants' default suffice to warrant the requested relief as a matter of law. *Agamede Ltd.*, 2007 WL 201167 at *1.

risk assumed by the insurer, and actually relied upon by the insurer in the issuance of the policy." *Merchant's Ins. Co. of N.H., Inc. v. 3 R Painting & Contracting Co., Inc.*, 2007 WL 2746816 (D.N.J. Sept. 19, 2007) at *2 (citing *First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 137 (2003)). An insurer's reliance upon any one particular material misrepresentation justifies rescission, *id.* at *4, and voids an insurance policy *ab initio* – the policy is treated as if it never existed. *Lawson*, 177 N.J. at 137; *see also Remsden v. Dependable Ins. Co.*, 71 N.J. 587, 589 (1976) (material misrepresentations in application justify rescission of policy *ab initio*).

New Jersey's test for materiality is similar, though somewhat less exacting, than New York's: "A misrepresentation, made in connection with an insurance policy, is material if, when made, 'a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action.'" *Palisades Safety & Ins. Ass'n v. Bastien,* 175 N.J. 144, 148 (2003) (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 542 (1990)); *Mass. Mut. Life Ins. Co. v. Manzo*, 122 N.J. 104, 115 (1991) (explaining that misrepresentation is material if it "naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium") (citation omitted).

Most significantly, however, an insurer seeking rescission of a policy under New Jersey law need not necessarily provide the supporting documentation required by New York law. Express language in a policy explaining that the insurance was issued in reliance upon the truthfulness of the applicant's representations, along with sworn statements by insurance company employees that the insured's misrepresentations affected their risk assessment and ultimate decision to issue coverage, will suffice. *See Booker v. Blackburn*, 942 F. Supp. 1005,

1011-12 (D.N.J. 1996). In light of the differing requirements for rescission under the respective laws of New York and New Jersey, I proceed to consider New York's rules for choosing between the two in the circumstances of this case.

    b.  New York's Choice-Of-Law Rules Require
       Application Of The Substantive Law Of New Jersey

In choosing between the contract laws of different states, New York courts apply a "grouping of contacts" test, *IBM*, 363 F.3d at 143; *GlobalNet*, 449 F.3d at 383 (citing *Stolarz*, 81 N.Y.2d at 226), and generally defer "to the law of the jurisdiction which has the greatest interest in the matter." *Avondale Indus. Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1422 (S.D.N.Y. 1991). Where the dispute concerns an insurance contract, courts consider the location of the insured risk, the parties' residence, and where the policy was negotiated and issued. *Id.*

Mastromarino is a New Jersey resident, and BTS a New Jersey corporation. Complaint ¶¶ 8, 9. Although BTS has its principal place of business in New York, and conducted the harvesting procedures at issue in the underlying lawsuits in that state, its only office is located in New Jersey, and it also performed harvesting procedures, and stored the harvested materials, at that site. *See* Lieberman Dec. ¶ 15; *id*. Ex. C (2004 application for insurance) ("2004 Application") at 13; *id*. Ex. H (reprinting Tom Hays, "Scandal Rocks Human Tissue Industry," *Associated Press Report*, June 11, 2006 ("Hays Article")) at 3. Moreover, while the Policy was issued in Illinois, Mastromarino appears to have completed and signed the application on BTS's behalf in New Jersey. 2005 Application at 2. In light of these extensive contacts with New Jersey I conclude that this action is most appropriately adjudicated under the substantive law of New Jersey.

B. <u>Liability</u>

Evanston seeks rescission of the Policy based on two categories of misrepresentations in the defendants' application for insurance. First, it cites the defendants' statements about the general nature of BTS's business, and contends that characterizing BTS as a legitimate venture was a material misrepresentation because Mastromarino was in fact using the company to operate a criminal enterprise. Second, Evanston relies on the falsity of several specific factual assertions in the 2005 Application, including the assertion that Mastromarino had never been investigated or disciplined by any administrative agency or professional association; the assertion that Mastromarino had never had any state professional license suspended; the assertion that BTS had never been cited for violating any licensing requirement for operation; the assertion that Mastromarino had never been treated for alcoholism or drug addiction; and (somewhat cumulatively) the assertion that all of the responses set forth in the application were true and correct. Complaint ¶ 31; Lieberman Dec. ¶¶ 11-17, 24-27.

I examine each category of statements in turn to determine whether Evanston has demonstrated that it is entitled to rescission. I turn first to the general description of BTS as a legitimate business, then to the specific representations that Evanston cites. In each case, I consider each of the elements that Evanston must establish to show that it is entitled to the relief it seeks: the falsity of the representation, materiality to the risk Evanston assumed by issuing the Policy, and Evanston's reliance on the representation in deciding to issue the Policy. As explained below, I conclude that Evanston has established each element required for the relief it seeks with respect to at least some of the specific representations it cites. Thus, even though I conclude that it has not established all of the elements with respect to the general claim of

13

legitimacy or one of the specific representations, I conclude that Evanston is entitled to rescission of the Policy. *See Merchant's Ins. Co. of N.H., Inc.*, 2007 WL 2746816 at *4 (citing *Lawson*, 177 N.J. at 137) (reliance on a single material misrepresentation justifies rescission)).

### 1. The General Description Of BTS As A Legitimate Business

As a component of its 2004 Application, BTS included a company curriculum vitae (the "CV") that described the nature and quality of its work. 2004 Application at 12. BTS resubmitted that CV in 2005. Lieberman Dec. ¶ 23. The CV describes BTS as a company "dedicated to the ethical recovery, preservation and distribution of human tissues through a commitment of excellence for the advancement of biomedical research and education." 2004 Application at 12. It goes on to describe the rigorous testing procedures to which BTS supposedly adhered in the conduct of its work and the national standards and guidelines by which it claimed to abide, as well as the quality of its facilities and specially trained staff. 2004 Application at 13.

Evanston alleges that those representations were wholly false – that in fact BTS failed to screen putative tissue and bone donors, failed to test harvested materials for various diseases, and, without contacting the donors' next of kin, forged consent for those operations. Complaint ¶¶ 28-29; Memo. at 4. As a result, the Food and Drug Administration ordered BTS to suspend its operations on February 3, 2006. Complaint ¶ 30.

Those uncontested allegations suffice for purposes of establishing liability, but are not enough to demonstrate that Evanston is entitled to any remedy in particular. Nor does anything else in the record suffice for that purpose: the fact that others have sued the defendants for their practices does not establish the falsity of the CV, nor does the pendency of an indictment against

Mastromarino on related criminal charges. Thus, even if I credit Evanston's affiants' assertions that the description of BTS as a legitimate business was a material representation on which Evanston relied,[5] which I do, I would nevertheless recommend against granting rescission on the basis of the CV alone. As explained below, however, that recommendation does not defeat Evanston's claim for relief.

### 2. Specific Misrepresentations

In the 2005 Application, Mastromarino checked the box marked "No" in response to the following questions:

> 10. Has the Applicant ever been cited for any violation of Federal, State or local licensing requirements for operation?
>
> ...
>
> 20. Has the Applicant or any director, officer, employee, or partner provided [sic] professional services on behalf of the Applicant been subject to disciplinary action or investigative procedures by a governmental or administrative agency, hospital, or professional association? ...
>
> Ever been treated for alcoholism or drug addiction?
>
> Ever had any state professional license or licensee [sic] to prescribe or dispense narcotics refuse [sic], suspended, revoked, renewal refused, or accepted only on special terms ...?

2005 Application at 4, 6. He provided the same answers to virtually identical questions in the 2004 Application (which BTS re-submitted as part of its application package in 2005).

---

[5] Malandrino Aff. ¶ 5 (stating that he "relied upon these representations in issuing the Policy, believing that BTS was a legitimate business ..."); *id*. ¶ 7 ("Had I been made aware that Mastromarino was not operating a legitimate business but was, instead, involved in a criminal enterprise, or had been investigated for, or accused of, same, I would not have issued the Evanston policy"); DE 11 ("O'Connell Aff.") ¶ 4 (stating that Evanston's underwriting guidelines prevent award of insurance policy to alleged criminal enterprise).

Mastromarino signed the 2005 Application, warranting that the information contained therein was true and correct. 2005 Application at 7-8.

Evanston alleges that each of those responses was false. Complaint ¶¶ 31, 32; Lieberman Dec. ¶ 32. To establish its entitlement to a specific form of relief, however, Evanston cannot stand pat on its Complaint, but must instead provide supporting evidence. It has done so with respect to each allegedly false answer but one.

Each of the other representations responsive to Question 20, as quoted above, was demonstrably false. According to the records of the New York State Education Department Office of Professional Discipline, in 2002 Mastromarino was administratively charged with fraud for submitting an insurance claim for dentistry that he did not perform, and for practicing as a dentist while his license was suspended. Lieberman Dec. Ex. G. As a result of those charges, Mastromarino entered into a Consent Order admitting guilt as to the latter charge and agreeing to suspension of his dental license for four years. *Id*. Similarly, although the evidence on this score is thin, it appears that, contrary to his statements in the applications, Mastromarino had been treated for alcoholism or drug addiction. *See* Hays Article at 2 ("[Mastromarino] tested positive for controlled substances ... [and] agreed to surrender his dentistry license for six months and enter rehab."); Powell Article at 3 ("Mastromarino surrendered his dental license ... [and] went into rehab ...").[6]

---

[6] I recognize that the reference to "rehab" – obviously meaning "rehabilitation" – does not lead inescapably to the conclusion that Mastromarino received treatment specifically for alcoholism or drug addiction. Indeed, he may have received no "treatment" at all, as the latter term is, strictly speaking, distinct from rehabilitation. Nevertheless, I believe it is a permissible inference that a "rehab" program will almost always include some element of treatment, and I believe it is also reasonable to infer that Mastromarino's entry into "rehab" as the result of a positive drug test means that the treatment was related to a substance abuse problem. Even if those inferences

With respect to the inquiry under Question 10, however, Evanston has not established the falsity of the denial that "the *Applicant* [had] ever been cited for any violation of Federal, State or local licensing requirements for operation[.]" 2005 Application at 4 (emphasis added). As far as I can discern, the record contains no indication that BTS itself – as opposed to Mastromarino individually – has ever received such a citation. BTS was the "Applicant" for coverage by the Policy, and the inquiry in Question 10 was directed only to that "Applicant," unlike other questions that sought information about "the Applicant or any director, officer, employee, or partner [who] provided professional services on behalf of the Applicant[.]" 2005 Application at 6. Evanston's failure to establish the falsity of the answer to Question 10 does not, however, defeat the claim for rescission: Evanston's demonstration that other statements were false suffices, as long as it can show materiality and reliance with respect to the demonstrably false statements. *See Merchant's Ins. Co. of N.H.*, 2007 WL 2746816 at *4 (citing *Lawson*, 177 N.J. at 137). I therefore turn to those remaining elements.

To establish materiality and reliance, Evanston must show that the true facts that the defendants concealed would have been relevant to a reasonable insurer and important in determining its course of action, and that the misrepresentations reasonably influenced Evanston's judgment in issuing the Policy. *Palisades Safety*, 175 N.J. at 148; *Manzo*, 122 N.J. at 155. To make that showing, Evanston has submitted affidavits by both Rocco Malandrino ("Malandrino"), the individual primarily responsible for underwriting the Policy, and his

---

might not carry the day in a contested proceeding, they should suffice here: access to proof that would more readily establish the truth or falsity of an assertion about Mastromarino's history of treatment is uniquely in Mastromarino's own hands, and his refusal to participate in these proceedings and provide such information to Evanston should not inure to his benefit.

supervisor Frances O'Connell ("O'Connell"). *See* Malandrino Aff.; O'Connell Aff. Malandrino and O'Connell have a combined 45 years of experience as underwriters in the insurance industry. Malandrino Aff. ¶ 1; O'Connell Aff. ¶ 1. O'Connell develops and maintains the relevant guidelines for issuing Evanston insurance policies. O'Connell Aff. ¶ 2. Both affiants support Evanston's allegation that it would not have issued the Policy had it been aware of the true facts as to any of the misrepresentations. Complaint ¶ 36; Malandrino Aff. ¶ 15 ("[a]ny one of the specific misrepresentations ... may have caused me not to issue the Policy"); O'Connell Aff. ¶ 3 ("Each ... misrepresentation pertains to underwriting issues such that, had I been made aware of the true facts, I would not have approved the issuance of the Policy..."). Their judgment, informed both by experience and by Evanston's applicable underwriting guidelines, O'Connell Aff. ¶¶ 5, 7-11, buttresses Evanston's allegation that the information BTS concealed would have reasonably influenced Evanston's decision to issue the Policy, and establishes that BTS's misrepresentations were material. Moreover, Evanston explicitly pleads reliance, Complaint ¶¶ 32, 36, and its allegations are supported by Malandrino's sworn statement that he "relied upon these representations in issuing the Policy." Malandrino Aff. ¶ 10.

    C.    <u>Evanston's Other Claims For Relief</u>

Evanston's Complaint pleads a total of eleven causes of action. The first two seek "rescission rendering the Policy void *ab initio*." Complaint ¶¶ 37, 41; *see also* Complaint at 18 (prayer for relief of an order "rescinding and voiding the Policy *ab initio* and returning the parties to the *status quo ante*"). Each of the remaining nine causes of action seeks to limit Evanston's obligations to the defendants under the Policy and is pleaded only "in the alternative, even if the Policy is not rescinded and void *ab initio*[.]" Complaint ¶¶ 43, 46, 50, 54, 58, 62, 66, 70, 74.

18

Those alternate claims for relief are predicated on the existence of an enforceable Policy, and thus become moot if the Policy is void *ab initio*. Because I conclude that Evanston is entitled to rescission on its first two claims, the court need not address the other nine, and should, upon granting judgment on the first two claims, dismiss the others as moot.

III. Recommendation

For the reasons set forth above, I respectfully recommend that the court enter a default judgment in favor of Evanston and against the defendants on the first two causes of action in the Complaint, and that it therefore rescind the Policy that Evanston issued to BTS and thereby render it void *ab initio*. Based on that recommendation, I further recommend that the court dismiss as moot the remaining nine causes of action in the Complaint.

IV. Objections

I direct the plaintiff to serve a copy of this Report and Recommendation on the defendants by certified mail, and to file proof of service with the court no later than October 29, 2007. Any objection to this Report and Recommendation must be filed no later than November 13, 2007. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900 (2d. Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
October 22, 2007

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge